1   **SCHULZ & SCHULZ, P. C.**
    Harry J. Schulz, III (CA SBN 205625)
2   310 N. Harborth Avenue
    P.O. Box 580
3   Three Rivers, TX 78071
    Telephone: (361) 786-2545
4   Facsimile: (361) 786-2543

5   Attorneys for Plaintiffs
    Colton Capital Corporation,
6   Colton Real Estate Group and
    Colton Properties, Inc.

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  COLTON CAPITAL CORPORATION, )      Case No.
    , a California corporation, COLTON )
12  REAL ESTATE GROUP, a California )   COLTON CAPITAL
    corporation, and COLTON )          CORPORATION'S, COLTON REAL
13  PROPERTIES, INC., a California )    ESTATE GROUP'S AND COLTON
    corporation, )                     PROPERTIES, INC.'S COMPLAINT
14                                )     FOR BREACH OF CONTRACT, BAD
                  Plaintiffs, )        FAITH AND DECLARATORY
15                                )     RELIEF
         v. )
16                                )     **DEMAND FOR JURY TRIAL**
    ZURICH AMERICAN INSURANCE )
17  COMPANY, a New York insurance )
    corporation, RLI INSURANCE )
18  COMPANY, an Illinois insurance )
    corporation, TWIN CITY FIRE )
19  INSURANCE COMPANY, an Indiana )
    insurance corporation, and RSUI )
20  INDEMNITY COMPANY, a New )
    Hampshire insurance corporation, )
21                                )
                  Defendants. )
22                                )
                                  )
23  _____ )

24

25

26

27

28

1    Plaintiffs Colton Capital Corporation ("Colton Capital"), Colton Real Estate
2  Group ("Colton Real Estate") and Colton Properties, Inc. ("Colton Properties")
3  (collectively, the "Entity Insureds") complain and allege as follows:

4                        **JURISDICTION AND VENUE**

5        1.      This action is an insurance coverage litigation arising out of Defendant
6  Zurich American Insurance Company's unreasonable refusal to advance defense
7  costs and indemnify the Entity Insureds for the claims asserted in the following
8  lawsuits and arbitration demands against the Entity Insureds and certain other
9  insureds, including individual insureds:

10  **State Court Matters:**

11       • *Acquire II, LTD, et al. v. Colton Real Estate, et al.,* Orange
12          County Superior Court Case No. 30-2011-00462521 (the
13          "*Acquire* Litigation");

14       • *Roudanez, et al. v. Colton Real Estate Group, et al.,* Orange
15          County Superior Court Case No. 30-2011-00502285 (the
16          "*Roudanez* Litigation"); and

17       • *Christensen v. David A. Colton, et al.,* Orange County Superior
18          Court Case No. 30-2011-00477186 (the "*Christensen* Litigation").

19  **Arbitration Matters:**

20       • *Acquire II, LTD, et al. v. Colton Real Estate, et al.* (the "*Acquire*
21          Arbitration"); and

22       • *Brown, et al. v. David A. Colton, et al.*, JAM Ref. No.
23          1200047912 (the "*Brown* Arbitration").[1]

24       2.      This Complaint seeks damages and declaratory relief arising from
25  Defendant Zurich's wrongful delay, refusal and denial of benefits due under a policy
26
27  _____

[1] The foregoing lawsuits and arbitration claims shall be collectively referred
28  to herein as the "Investor Claims."

1  of insurance issued to the Entity Insureds.  The Complaint further seeks declaratory

2  relief concerning the depletion and/or exhaustion of Zurich's policy limits, and the

3  relative policy obligations of Defendants RLI Insurance Company ("RLI"), Twin

4  City Fire Insurance Company ("Twin City") and RSUI Indemnity Company

5  ("RSUI"), each of which provide insurance coverage excess of Zurich's policy.

6      3.    Defendants Zurich, RLI, Twin City and RSUI shall be collectively

7  referred to herein as the "Defendant Insurers."

8      4.    This Court has subject matter jurisdiction of this action pursuant to 28

9  U.S.C. § 1332 in that there is complete diversity of citizenship between and among

10  the Entity Insureds and each of the Defendant Insurers.  The matter in controversy

11  exceeds the sum or value of $75,000, exclusive of interest and costs.

12      5.    Venue is proper in this Court under 28 U.S.C. § 1391 in that each of the

13  Defendant Insurers are subject to personal jurisdiction in this district at the time the

14  action is commenced, and because a substantial part of the events giving rise to the

15  claims asserted in this Complaint occurred in this district.  Specifically, the

16  underlying claims against the Entity Insureds and certain individual insureds were

17  made in this district, and the underlying lawsuits for which Defendant Zurich

18  wrongfully denied coverage were filed in a state court located in this district.

19  Moreover, the performance of each of the Defendant Insurers' obligations under

20  their respective insurance policies at issue is due in this district.

21  **PARTIES**

22      6.    Colton Capital is, and at all times herein mentioned was, a corporation

23  organized and existing under the laws of California, with its principal place of

24  business in Irvine, California.

25      7.    Colton Real Estate is, and at all times herein mentioned was, a

26  corporation organized and existing under the laws of California, with its principal

27  place of business in Irvine, California.

28

8. Colton Properties is, and at all times herein mentioned was, a corporation organized and existing under the laws of California, with its principal place of business in Irvine, California.

9. The Entity Insureds are informed and believe, and based thereupon allege, that Defendant Zurich is, and at all times herein mentioned was, a corporation organized and existing under the laws of New York with its principal place of business in Illinois, and was authorized to do business in California.

10. The Entity Insureds are informed and believe, and based thereupon allege, that Defendant RLI is, and at all times herein mentioned was, a corporation organized and existing under the laws of Illinois with its principal place of business in Illinois, and was authorized to do business in California.

11. The Entity Insureds are informed and believe, and based thereupon allege, that Defendant Twin City is, and at all times herein mentioned was, a corporation organized and existing under the laws of Indiana with its principal place of business in Connecticut, and was authorized to do business in California.

12. The Entity Insureds are informed and believe, and based thereupon allege, that Defendant RSUI is, and at all times herein mentioned was, a corporation organized and existing under the laws of New Hampshire with its principal place of business in Georgia, and was authorized to do business in California.

## **FACTUAL BACKGROUND**

13. In exchange for valuable consideration, Zurich provided policies of insurance to the Entity Insureds, including without limitation, directors and officers liability insurance under written insurance policy DOC 5087872 03 (effective September 29, 2007 to September 29, 2008) (the "2007-2008 Zurich Policy").

14. In exchange for valuable consideration, RLI provided policies of insurance to the Entity Insureds, including without limitation, directors and officers liability insurance under written insurance policy EPG0006127A (effective September 29, 2007 to September 29, 2008) (the "2007-2008 RLI Policy").

15.     In exchange for valuable consideration, Twin City provided policies of insurance to the Entity Insureds, including without limitation, directors and officers liability insurance under written insurance policy 00 PE 0226221-07 (effective September 29, 2007 to September 29, 2008) (the "2007-2008 Twin City Policy").

16.     In exchange for valuable consideration, RSUI provided policies of insurance to the Entity Insureds, including without limitation, directors and officers liability insurance under written insurance policy HS626614 (effective September 29, 2007 to September 29, 2008) (the "2007-2008 RSUI Policy").

17.     At all times herein mentioned, the Entity Insureds paid all premiums on each of the 2007-2008 Zurich Policy, the 2007-2008 RLI Policy, the 2007-2008 Twin City Policy and the 2007-2008 RSUI Policy as they became due and payable, and have duly complied with all material conditions in all such policies, except for those conditions which have been waived or excused by the Defendant Insurers.

18.     The 2007-2008 Zurich Policy insures the Entity Insureds against, among other things, "all Loss for which the Company grants indemnification to the Insured Persons, as permitted or required by law, and which the Insured Persons have become legally obligated to pay on account of any Claim first made against them…during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act taking place before or during the Policy Period." ("Coverage B").  The 2007-2008 Zurich Policy also provides that Zurich has the duty to advance Defense Costs incurred by the insureds, prior to the final disposition of any Claim.  And, in the event the insureds incur Loss that is covered by the policy and loss that is not covered by the policy (including because a Claim against the insureds alleges covered and uncovered matters), the 2007-2008 Zurich Policy provides that "100% of such Defense Costs will be considered covered Loss…" The 2007-2008 Zurich Policy provides a $5 million limit applicable to Coverage B, subject to a $75,000 deductible.

19.     The 2007-2008 RLI Policy insures the Entity Insureds against, among other things, that amount of loss (including defense costs and indemnity expenses) which exceeds the amount of loss payable by the 2007-2008 Zurich Policy, up to an aggregate limit of $5 million.  The attachment point for the 2007-2008 RLI Policy is thus $5 million.  The coverage of the 2007-2008 RLI Policy "follows form" to the coverage provided by the 2007-2008 Zurich Policy, in that coverage under the 2007-2008 RLI Policy applies "in conformance with the terms and conditions" of the 2007-2008 Zurich Policy, except to the extent otherwise provided in the 2007-2008 RLI Policy.

20.     The 2007-2008 Twin City Policy insures the Entity Insureds against, among other things, that amount of loss (including defense costs and indemnity expenses) which exceeds the amount of loss payable under the combined limits of the 2007-2008 Zurich Policy and the 2007-2008 RLI Policy, up to an aggregate limit of $5 million.  The attachment point for the 2007-2008 Twin City Policy is thus $10 million.  The coverage of the 2007-2008 Twin City Policy likewise "follows form" to the coverage provided by the 2007-2008 Zurich Policy, but also incorporates any further limitations on such coverage provided in the 2007-2008 RLI Policy.

21.     The 2007-2008 RSUI Policy insures the Entity Insureds against, among other things, that amount of loss (including defense costs and indemnity expenses) which exceeds the amount of loss payable under the combined limit of the 2007-2008 Zurich Policy, the 2007-2008 RLI Policy and the 2007-2008 Twin City Policy, up to an aggregate limit of $5 million.  The attachment point for the 2007-2008 RSUI Policy is thus $15 million.  The coverage of the 2007-2008 RSUI Policy also "follows form" to the coverage provided by the 2007-2008 Zurich Policy, and also incorporates any further limitations on such coverage provided in either the 2007-2008 RLI Policy or the 2007-2008 Twin City Policy.

22.     The Entity Insureds provided timely notice to Zurich of the circumstances that would ultimately give rise to the Investor Claims.  Thereafter, the

Entity Insureds provided timely notice of the Investor Claims to each of the Defendant Insurers.

23.     The underlying plaintiffs/claimants in the Investor Claims assert numerous claims arising out of a variety of Wrongful Acts allegedly committed by the Entity Insureds and/or certain other insureds, including individual insureds, in connection with a series of commercial real estate investments.  Among these claims are alleged breaches of contract (primarily by the Entity Insureds), breaches of the implied covenant of good faith and fair dealing (primarily by the Entity Insureds), breaches of fiduciary duty (by the Entity Insureds and certain individual insureds), fraud and deceit (by the Entity Insureds and certain individual insureds), elder abuse (both under California and Utah law) (as to the Entity Insureds and certain individual insureds), and declaratory relief.  In particular, the Investor Claims assert, among other things:

- That certain individual insureds breached their fiduciary duties to the underlying plaintiffs/claimants by making misrepresentations about a plan to purchase interests in the name of the Colton Family Trust and by personally profiting as a direct result of such misrepresentations;

- That the Entity Insureds and certain individual insureds committed elder abuse by, *inter alia,* misrepresenting the time that the commercial real estate investments would be held before sale, misappropriating purchase opportunities that rightfully belonged to the underlying plaintiffs/claimants (at least in part), engaging in tactics designed to harass and intimidate the underlying plaintiffs/claimants into selling their investment interests below market value and withdrawing any claims relating to the investments, interfering with the underlying plaintiffs'/claimants'

Colton Capital Corporation, et al.'s Complaint for Breach of
Contract, Bad Faith and Declaratory Relief

attorney-client relationships, and other purported instances of self-dealing; and

- That the Entity Insureds and certain individual insureds fraudulently induced the underlying plaintiffs/claimants to invest in commercial real estate funds, and thereafter engaged in other fraudulent conduct to enrich themselves at the underlying plaintiffs'/claimants' expense.  Such additional fraudulent conduct included paying themselves improper management fees, putting the underlying plaintiffs/claimants under financial duress by improperly ceasing distributions and retaining profits, making low-ball offers to purchase the underlying plaintiffs'/claimants' property interests, and wrongly requiring the underlying plaintiffs/claimants to provide full releases of the Entity Insureds, individual insureds and others upon the sale of their investment interests.

24.     Certain of the Investor Claims continue to be litigated by and among the parties.[2]

25.     From and after notice of the Investor Claims was provided to Defendant Zurich and the other Defendant Insurers, the Entity Insureds have incurred, and continue to incur, defense costs necessary to avoid or at least minimize the potential liability faced by both the Entity Insureds and certain individual insureds in the Investor Claims.[3]  Defendant Zurich has been sent all such defense costs incurred to date, as well as the supporting documentation for such costs.  The defense costs and indemnity expenses incurred and paid by the Entity Insureds in

---

[2] The underlying parties recently settled the *Christensen* Litigation and the *Brown* Arbitration.

[3] To the extent permitted by law, the Entity Insureds are providing a defense and indemnity to the individual insureds that are defendants/respondents in the Investor Claims.

the Investor Claims exceed the $75,000 deductible and the $5 Million limit of the 2007-2008 Zurich Policy, and the Entity Insureds have requested that Defendant Zurich pay the full amount of its limit in respect of such defense costs and indemnity expenses.  Moreover, the defense costs and indemnity expenses incurred in the Investor Claims have now exceeded the $5 million attachment point of the 2007-2008 RLI Policy, and the Entity Insureds have requested that Defendant RLI begin to pay any defense costs and indemnity expenses in excess of that $5 million attachment point.

26.     Yet, despite having promised to pay all such defense costs and indemnity expenses, Defendant Zurich has wrongfully delayed, denied and refused, and continues to wrongfully delay, deny and refuse, to pay millions of dollars of such defense costs or indemnity expenses.  Consequently, the Entity Insureds have been forced to incur or pay millions of dollars out of its own pocket without reimbursement from Defendant Zurich.

27.     Moreover, Defendant Zurich even unreasonably failed to consent to the settlements of the *Brown* Arbitration and the *Christensen* Litigation – matters for which it accepted a duty to advance Defense Costs – despite the fact that such settlements were recommended by underlying defense counsel, despite the fact that the Entity Insureds repeatedly requested such consent from Defendant Zurich, and despite the fact that Defendant Zurich had a policy obligation not to unreasonably withhold such consent.

28.     Since the settlements of the *Brown* Arbitration and the *Christensen* Litigation, Defendant Zurich has also wrongfully delayed, denied and refused, and continues to wrongfully delay, deny and refuse, to indemnify the insureds against the settlement payments required of the Entity Insureds to effectuate such settlements, in breach of its promise under the 2007-2008 Zurich Policy to indemnify the insureds against such Loss.

# FIRST CLAIM FOR RELIEF

## (Breach of Contract – Against Defendant Zurich)

29.     The Entity Insureds reallege and incorporate by this reference each of the foregoing Paragraphs of this Complaint as if fully set forth herein.

30.     Defendant Zurich has breached its contractual obligations under the 2007-2008 Zurich Policy issued to the Entity Insureds, including Defendant Zurich's duty to advance the defense costs incurred by the insureds in defending against the Investor Claims, by, among other things, denying coverage for, delaying, refusing and failing to pay millions of dollars of the insureds' defense costs and indemnity expenses incurred with respect to the Investor Claims, including any defense costs incurred in the *Acquire* Litigation, the *Roudanez* Litigation and the *Acquire* Arbitration.  Defendant Zurich further breached its contractual obligations under the 2007-2008 Zurich Policy by imposing an improper allocation upon the insureds' defense costs incurred with respect to the *Christensen* Litigation and the *Brown* Arbitration, and by failing to consent to or pay the indemnity expenses resulting from the settlements of both the *Christensen* Litigation and the *Brown* Arbitration.

31.     As a direct and proximate result of Defendant Zurich's breach of contract as alleged herein, the Entity Insureds have been required to incur, agree to pay or pay millions of dollars to respond to, defend and indemnify against the Investor Claims without reimbursement.  The Entity Insureds have thereby been damaged in an amount to be determined at trial, which damages include, without limitation, all of the Entity Insureds' unreimbursed defense costs and indemnity expenses which exceed the $75,000 deductible of the 2007-2008 Zurich Policy and which have been incurred in connection with responding to, defending and indemnifying against the Investor Claims, together with interest thereon.

## SECOND CLAIM FOR RELIEF

### (Bad Faith – Against Defendant Zurich)

32.     The Entity Insureds reallege and incorporate by this reference each of the foregoing Paragraphs of this Complaint as if fully set forth herein.

33.     Defendant Zurich has breached its implied covenant of good faith and fair dealing by, among other things: (1) wrongfully and unreasonably denying its duty to advance the defense costs incurred by the insureds in defending against the Investor Claims, including such defense costs incurred in the *Acquire* Litigation, the *Roudanez* Litigation and the *Acquire* Arbitration; (2) wrongfully and unreasonably imposing an improper allocation upon the insureds' defense costs incurred with respect to the *Christensen* Litigation and the *Brown* Arbitration; (3) wrongfully and unreasonably failing to consent to or pay the indemnity expenses resulting from the settlements of both the *Christensen* Litigation and the *Brown* Arbitration; (4) compelling the Entity Insureds to institute litigation to recover amounts due under the 2007-2008 Zurich Policy; (5) failing to adopt and implement reasonable standards for the investigation and handling of the Entity Insureds' claim; (6) taking unreasonable positions concerning the coverage provided under the 2007-2008 Zurich Policy; and (7) misrepresenting the coverage provided by the 2007-2008 Zurich Policy.

34.     As a direct and proximate result of Defendant Zurich's breaches of its duties of good faith and fair dealing as set forth above, the Entity Insureds have suffered damages, plus interest, together with all of their attorneys' fees and costs incurred in prosecuting this action to seek insurance coverage benefits wrongfully withheld by Defendant Zurich.

35.     The unjustified and unreasonable conduct of Defendant Zurich was calculated to deprive the Entity Insureds of the benefits of their bargain, with resulting harm to the Entity Insureds.  Defendant Zurich's breaches of its duties of

good faith and fair dealing were done with a conscious disregard of the Entity
Insureds' rights and with the intent to vex, injure or annoy the Entity Insureds such
as to constitute oppression or malice.  The Entity Insureds are therefore entitled to
exemplary damages to punish and make an example of Defendant Zurich.

### THIRD CLAIM FOR RELIEF

### (Declaratory Relief – Against All Defendants)

36.     The Entity Insureds reallege and incorporate by this reference each of
the foregoing Paragraphs of this Complaint as if fully set forth herein.

37.     An actual controversy has arisen and now exists between the Entity
Insureds and each of the Defendant Insurers regarding whether:  (a) the 2007-2008
Zurich Policy has been exhausted by the defense costs and indemnity expenses
already incurred by the Entity Insureds and/or required to be advanced/paid by
Defendant Zurich in connection with the Investor Claims; and (b) Defendant RLI is
required under the 2007-2008 RLI Policy to currently advance any and all defense
costs which have been or will be incurred by the insureds in connection with the
Investor Claims, as well as pay any and all sums which have been or will be
incurred by the insureds in any settlement or judgment on any of the Investor
Claims, in excess of the $5 million attachment point of the 2007-2008 RLI Policy.

38.     In the event the 2007-2008 Zurich Policy is not found to be exhausted
by the defense costs and indemnity expenses already incurred by the Entity Insureds
and/or required to be advanced/paid by Defendant Zurich in connection with the
Investor Claims, an actual controversy has arisen and now exists between the Entity
Insureds and Defendant Zurich regarding whether the 2007-2008 Zurich Policy
requires Defendant Zurich to:  (a) currently advance any and all defense costs which
will be incurred by the insureds in connection with the Investor Claims in excess of
the $75,000 deductible, up to the $5 million limit of the 2007-2008 Zurich Policy;
and (b) currently pay any and all sums which will be incurred by the insureds in any

1  settlement or judgment on any of the Investor Claims in excess of the $75,000

2  deductible, up to the $5 million limit of the 2007-2008 Zurich Policy.

3       39.    A judicial declaration is necessary and appropriate at this time in order

4  to ascertain the Entity Insureds' rights to advancement of such defense costs and

5  payment of indemnity expenses under both the 2007-2008 Zurich Policy and the

6  2007-2008 RLI Policy.  Indeed, given that such defense costs are critical to the

7  defense of the Investor Claims, such a judicial declaration is urgently needed to

8  enable the insureds to fully present their defenses and to prevent substantial

9  prejudice to the insureds' interests.  The Entity Insureds seek a judicial declaration

10 that:  (a) the 2007-2008 Zurich Policy has been exhausted by the defense costs and

11 indemnity expenses already incurred by the Entity Insureds and/or required to be

12 advanced/paid by Defendant Zurich in connection with the Investor Claims; and (b)

13 Defendant RLI is required under the 2007-2008 RLI Policy to currently advance any

14 and all defense costs which will be incurred by the insureds in connection with the

15 Investor Claims, as well as any and all sums which will be incurred by the insureds

16 in any settlement or judgment on any of the Investor Claims, in excess of the $5

17 million attachment point of the 2007-2008 RLI Policy.

18      40.    However, in the event the 2007-2008 Zurich Policy is not found to be

19 exhausted by the defense costs and indemnity expenses already incurred by the

20 Entity Insureds and/or required to be advanced/paid by Defendant Zurich in

21 connection with the Investor Claims, the Entity Insureds alternately seek a judicial

22 declaration that the 2007-2008 Zurich Policy requires Defendant Zurich to:  (a)

23 currently advance any and all defense costs which will be incurred by the insureds in

24 connection with the Investor Claims in excess of the $75,000 deductible, up to the

25 $5 million limit of the 2007-2008 Zurich Policy; and (b) currently pay any and all

26 sums which will be incurred by the insureds in any settlement or judgment on any of

27 the Investor Claims in excess of the $75,000 deductible, up to the $5 million limit of

28 the 2007-2008 Zurich Policy.

## PRAYER FOR RELIEF

WHEREFORE, the Entity Insureds pray for judgment against the Defendant Insurers, as follows:

1.      For an expedited declaration that:  (a) the 2007-2008 Zurich Policy has been exhausted by the defense costs and indemnity expenses already incurred by the Entity Insureds and/or required to be advanced/paid by Defendant Zurich in connection with the Investor Claims; and (b) Defendant RLI is required under the 2007-2008 RLI Policy to currently advance any and all defense costs which will be incurred by the insureds in connection with the Investor Claims, as well as any and all sums which will be incurred by the insureds in any settlement or judgment on any of the Investor Claims, in excess of the $5 million attachment point of the 2007-2008 RLI Policy;

2.      In the event the 2007-2008 Zurich Policy is not found to be exhausted by the defense costs and indemnity expenses already incurred by the Entity Insureds and/or required to be advanced/paid by Defendant Zurich in connection with the Investor Claims, for an expedited declaration that the 2007-2008 Zurich Policy requires Defendant Zurich to:  (a) currently advance any and all defense costs which will be incurred by the insureds in connection with the Investor Claims in excess of the $75,000 deductible, up to the $5 million limit of the 2007-2008 Zurich Policy; and (b) currently pay any and all sums which will be incurred by the insureds in any settlement or judgment on any of the Investor Claims in excess of the $75,000 deductible, up to the $5 million limit of the 2007-2008 Zurich Policy;

3.      For compensatory damages, including all of the Entity Insureds' unreimbursed defense costs and indemnity expenses which exceed the $75,000 deductible of the 2007-2008 Zurich Policy and which have been incurred in connection with responding to, defending and indemnifying against the Investor Claims and any other benefits due under the 2007-2008 Zurich Policy;

4.      For foreseeable consequential damages, in an amount to be proven at

1  trial;

2      5.      For all other damages proximately caused by Defendant Zurich's bad

3  faith, in an amount to be proven at trial;

4      6.      For exemplary and punitive damages;

5      7.      For interest as allowed by law;

6      8.      For the Entity Insureds' attorneys' fees and costs of suit in this action;

7  and

8      9.      For such other and further relief as the Court may deem just and proper.

9  Dated:  July 10, 2015                          Respectfully submitted,

10

11                                               SCHULZ & SCHULZ, P.C.

12

13                              By: _____

14                                  Harry J. Schulz, III
                                    Attorneys for Plaintiffs
15                                  Colton Capital Corporation, Colton
                                    Real Estate Group and Colton
16                                  Properties, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

## JURY TRIAL DEMAND

1.     The Entity Insureds hereby demand trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  July 10, 2015                          Respectfully submitted,

SCHULZ & SCHULZ, P.C.

By: _____

Harry J. Schulz, III
Attorneys for Plaintiffs
Colton Capital Corporation, Colton
Real Estate Group and Colton
Properties, Inc.